JUDGE KARAS

BISCEGLIE & DeMARCO, L.L.C.
365 Rifle Camp Road
West Paterson, N.J. 07424
(973) 742-8900
Fax (973) 742-8394
Angelo R. Bisceglie, Jr. (AB9251)
Counsel for Plaintiff

07 CV 10469

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUAN BREA<br><br>Plaintiff,<br><br>-v-<br><br>NATIONAL RAILROAD PASSENGER CORP. d/b/a AMTRAK, DMJM HARRIS, HI-TECH BREAKING INC., PROPERTY OWNERS A-Z (said names being fictitious), RAILROAD OWNERS AND OPERATORS A-Z (said names being fictitious), PUBLIC ENTITIES A-Z (said names being fictitious), CORPORATIONS A-Z (said names being fictitious).<br><br>Defendants. | CIVIL ACTION NO.:<br><br><br>COMPLAINT and JURY DEMAND |

Plaintiff, Juan Brea, residing at 40 Bateman Way, Hillsborough, New Jersey, by and through his attorneys, Bisceglie & DeMarco, LLC, as for his complaint states as follows:

### JURISDICTION AND VENUE

1. This is a personal injury action in which jurisdiction is asserted under 28 U.S.C. §1331 insofar as defendant National Railroad Passenger Corp. d/b/a Amtrak ("Amtrak") was created by an Act of Congress, 49 U.S.C. §24101 et seq. and more than half of its corporate stock is owned by the Federal government. See 28 U.S.C. §1349.

2. This is a personal injury action in which jurisdiction is also asserted under 28 U.S.C.

§1332 insofar as the matter in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens / corporations of different states.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 (a) and (c) in that at all times relevant to this action, the Defendants were corporations doing business in this District, and a substantial part of the events giving rise to Plaintiff's claim occurred in this District.

## FACTUAL BACKGROUND

4. On or about June 18, 2007, ("date of incident") Plaintiff was employed by Slattery Skansa Inc. ("Slattery") as a rock drill operator. On the date of accident, Plaintiff and his co-employee, Chris Tado were operating a rock drill, in a tunnel which upon information and belief was owned and operated by National Railroad Passenger Corp, d/b/a Amtrak ("Amtrak"), located in Manhattan, New York.

5. The location where plaintiff and his co-employee were performing work on the date of incident, included, but was not limited to the project known as "Rehabilitation of East River Tunnels and Structures, 1st Avenue Ventilation Shaft, Manhattan, New York City", ("work location"), and was in the vicinity of catenary wires which carried live electricity and high voltage current above railroad tracks to power railroad engines and trains which run beneath such wires.

6. Additionally, at all times prior to, and at the time of incident, and on the date of incident, the work location where plaintiff was required by his employer to operate a rock drill was wet, the air and environment in the vicinity of such location was moist, and contained falling water from the tunnel walls and ceiling. The defendants were aware, or should have been aware of same.

7. On numerous occasions prior to the date of incident, arcing occurred at the work location,

2

whereby high voltage electricity and current traveled out of the catenary wires, into the air and vicinity surrounding the catenary wires, presenting an extreme hazard and danger to any persons in the vicinity.

8. The work site was shut down twice during the year preceding the date of incident, due to arcing. Since the date of incident, Slattery Skansa Inc. has ceased work at the work location and subject job site.

9. As of February 6, 2007, as memorialized by a memorandum from Slattery Skansa Inc. addressed to "concerned workers", Amtrak represented that it had corrected all bonding and grounding issues in Lines 1, 2, 3 & 4 shafts, and that "this made it safe as per Amtrak to work in these areas even if an outage occurs again in the future, as explained by Mr. Robert Verhelle, Deputy Chief Engineer of Amtrak". The memorandum continues that Mr. Verhelle addressed "the situation" onsite with the workers on or about February 5, 2007. As such, the memorandum concludes, Slattery Skansa Inc. agreed "to return to work as of February 5, 2007".

10. In fact, Amtrak failed to correct such problems, and Hi-Tech Breaking Inc., and DMJM Harris each failed to ensure that Amtrak had corrected such problems or to personally correct same. Due to such negligence and/or other negligent acts/omissions pertaining to electricity to be developed during discovery in this matter, plaintiff was electrocuted on the date of incident.

11. At the time of the electrocution incident, plaintiff was operating a rock drill made of metal, which was wet from falling water from the tunnel ceiling and walls, and arcing occurred. The defendants were aware, or should have been aware of same. A power outage occurred. When the power was restored, or shortly thereafter, arcing occurred, and plaintiff as well as

his co-employee were struck by high voltage electrical current from the catenary wires, and were electrocuted.

12. As a result of being electrocuted, plaintiff was caused to sustain partial loss of vision in his left eye including constant blurriness and lack of peripheral vision, severe neurological damage, partial loss of function to his left arm and hand, left arm weakness, left hand numbness, burns, mental and cognitive deficits, physical and emotional trauma, injury to his cervical vertebrae, and pain and suffering.

13. Such electrocution and physical injuries have caused plaintiff to become partially physically disabled and unable to return to work as a rock drill operator, and prevents him from returning to work in other capacities as a manual laborer.

## FIRST COUNT
## AMTRAK

14. Plaintiff incorporates all preceding paragraphs as though set forth here in full.

15. At all times relevant to his action, Defendant National Railroad Passenger Corp. d/b/a Amtrak ("Amtrak") was a corporation doing business in the State of New York, having a business address of 60 Massachusetts Avenue NE, Washington, DC 20002.

16. At all times relevant to his action, and at the time of incident, Amtrak owned and operated the tunnels and/or rails and/or electric catenary wires and/or work location referenced in the Factual Background section of this complaint.

17. Plaintiff was lawfully upon the premises owned by Amtrak at the time of incident, and was engaged in performing construction work on behalf of Amtrak, through his employer Slattery, at the time of incident.

18. Amtrak owed plaintiff a duty to not subject him to extraordinary dangers/dangerous conditions on its premises of which it had actual and/or constructive knowledge and/or which could foreseeable cause injury and harm, including but not limited to electrocution hazard, while plaintiff was upon its premises, and performing construction work and/or his required job duties.

19. Amtrak breached such duty.

20. Amtrak owed plaintiff a duty to maintain a reasonably safe work site and breached such duty.

21. Amtrak owed plaintiff a duty to administer safety procedures, and to coordinate and ensure job safety and breached such duty.

22. Amtrak owed plaintiff a duty to protect him from extreme dangers on its premises and at the work location, of which it aware or should have been aware, to prevent plaintiff from being assigned to work in a zone of extreme electrocution hazard, and to take reasonable measures to safeguard plaintiff from electrocution hazards from its catenary wires and/or electrical sources and any other foreseeable hazards, and breached such duties.

23. As a direct and proximate cause of the acts and/or omissions on the part of Amtrak, and of the breaches of duty described above, Amtrak caused plaintiff to suffer economic, physical, and emotional damages, including but not limited to pain and suffering, personal injury, emotional distress, permanent disability, and past and future loss of income.

24. The acts and omissions of Amtrak constituted gross negligence, and/or were willful, wanton and egregious in their nature.

**WHEREFORE**, plaintiff demands judgment, as to the First Count of this complaint, in an amount to be determined at trial but believed to be in excess of $5,000,000.00,

A. for compensatory damages,
B. punitive damages,
C. reasonable attorney fees,
D. together with costs and disbursements associated with bringing this action.

## SECOND COUNT

## DMJM HARRIS

25. Plaintiff incorporates all preceding paragraphs as though set forth here in full.

26. At all times relevant to his action, defendant DMJM Harris was a corporation doing business in the State of New York, having a business address of 605 Third Avenue New York, NY 10158.

27. At all times relevant to his action, DMJM Harris acted as engineering consultants, site safety engineers, and/or contractors, and/or supervisors at the work location including the location of incident.

28. By virtue of such, DMJM Harris assumed and owed plaintiff a duty to not subject him to extraordinary dangers known to it, while plaintiff was performing his required job duties, at the work location, and breached such duty.

29. DMJM Harris knew, or should have known, with substantial certainty that its conduct of allowing plaintiff to work under the conditions described in the Factual Background above, subjected plaintiff to a likelihood of serious injury or death.

30. DMJM Harris owed plaintiff a duty to maintain a reasonably safe work site and breached such duty.

31. DMJM Harris owed plaintiff a duty to administer safety procedures and to coordinate and

ensure job safety, and breached such duty.

32. DMJM Harris owed plaintiff a duty to protect him from extreme dangers on the job site and at the work location, of which it was aware or should have been aware, and/or to prevent plaintiff from being assigned to work in a zone of known extreme electrocution hazard ie. the location of incident, and breached such duties.

33. As a direct and proximate cause of the acts and/or omissions on the part of DMJM Harris, and of the breaches of duty described above, DMJM Harris caused plaintiff to suffer economic, physical, and emotional damages, including but not limited to pain and suffering, personal injury, emotional distress, permanent disability, and past and future loss of income.

34. The acts and omissions of DMJM Harris constituted gross negligence, and/or were willful, wanton and egregious in their nature.

**WHEREFORE,** plaintiff demands judgment, as to the Second Count of this complaint, in an amount to be determined at trial but believed to be in excess of $5,000,000.00;

A. for compensatory damages,
B. punitive damages,
C. reasonable attorney fees,
D. interest,
E. together with costs and disbursements associated with bringing this action.

### THIRD COUNT

### HI-TECH BREAKING INC.

35. Plaintiff incorporates all preceding paragraphs as though set forth here in full.

36. At all times relevant to his action, defendant Hi-Tech Breaking Inc. was a corporation

doing business in the State of New York, having a business address of 528 Bryant Avenue, Bronx, NY 10474.

37. At all times relevant to his action, Hi-Tech Breaking Inc. was primary project consultant and/or general contractor, and/or subcontractor, at the work location.

38. By virtue of such, Hi-Tech Breaking Inc. owed plaintiff a duty to protect him from extreme dangers on the job site and at the work location of which it was aware or should have been aware, and/or to prevent plaintiff from being assigned to work in a zone of known extreme electrocution hazard ie. the location of incident, and breached such duties.

39. Hi-Tech Breaking Inc. knew, or should have known, with substantial certainty that its conduct of allowing plaintiff to work under the conditions described in the Factual Background above, subjected plaintiff to a likelihood of serious injury or death.

40. Hi-Tech Breaking Inc. owed plaintiff a duty to maintain a reasonably safe work site and breached such duty.

41. Hi-Tech Breaking Inc. owed plaintiff a duty to administer safety procedures and to coordinate and ensure job safety and breached such duty.

42. Hi-Tech Breaking Inc. owed plaintiff a duty to protect him from known extreme dangers on the job site and at the work location, and to prevent plaintiff from being assigned to work in a zone of known extreme electrocution hazard ie. the location of incident, and breached such duties.

43. As a direct and proximate cause of the acts and/or omissions on the part of Hi-Tech Breaking Inc., and of the breaches of duty described above, Hi-Tech Breaking Inc. caused plaintiff to suffer economic, physical, and emotional damages, including but not

limited to pain and suffering, personal injury, emotional distress, permanent disability, and past and future loss of income.

44. The acts and omissions of Hi-Tech Breaking Inc. constituted gross negligence, and/or were willful, wanton and egregious in their nature.

**WHEREFORE**, plaintiff demands judgment, as to the Third Count of this complaint, in an amount to be determined at trial but believed to be in excess of $5,000,000.00,

  A. for compensatory damages,
  B  punitive damages,
  C. reasonable attorney fees,
  E. interest,
  F. together with costs and disbursements associated with bringing this action.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 8, 2007

_____
Angelo R. Bisceglie, Jr. (AB9251)

Bisceglie & DeMarco, L.L.C.
365 Rifle Camp Road
West Paterson, N.J. 07424
(973) 742-8900
Fax – (973) 742-8394

Z:\share\Brea, Juan\complaint.doc